IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMISI JERMAINE CALLOWAY,

        Plaintiff,                No. 2:09-cv-2907 GEB EFB P

    vs.

M. VEAL, et al.,

        Defendants.         FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  The remaining defendants in this action, Veal and Andreasen, have filed a motion for summary judgment.  Dckt. No. 45.  For the reasons that follow, it is recommended that the motion be granted.

**I.    Background**

       This action proceeds on the amended complaint filed December 14, 2011.  Dckt. No. 16. Plaintiff claims that defendants Andreasen and Veal were deliberately indifferent to his serious medical needs while he was in administrative segregation under "contraband surveillance watch" from July 30, 2006 to August 7, 2006.  Dckt No. 16 at 5-6.  Specifically, plaintiff alleges that he "was placed in leg restraints and leg irons" in a locked cell without a working toilet, "left in full restraints and denied all medical attention for six days," even after his hemodialysis access

became clotted.  *Id.* at 5.  Plaintiff alleges that he was forced to remain in chains and under a bright beam light, 24 hours a day.  *Id.* at 5-6.  Plaintiff alleges that it was defendant Veal's "action" to leave him shackled in the cell without medical treatment.  *Id.* at 6.

Plaintiff alleges that defendant Andreasen ignored his serious medical needs during this period when he "knowingly kept me in restraints and shakles [sic] for" six days without medical treatment.  *Id.*  Further, plaintiff alleges that defendant Andreasen delayed the necessary declotting treatment after his access became clotted on August 1, 2006 until August 7, 2006.  *Id.*

**II.     Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its

1   claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

2   an essential element of the nonmoving party's case necessarily renders all other facts

3   immaterial."  *Celotex*, 477 U.S. at 322.

4         Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

5   the court must again focus on which party bears the burden of proof on the factual issue in

6   question.  Where the party opposing summary judgment would bear the burden of proof at trial

7   on the factual issue in dispute, that party must produce evidence sufficient to support its factual

8   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

9   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

10   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

11   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

12   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

13   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

14   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

15         The court does not determine witness credibility.  It believes the opposing party's

16   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

17   *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

18   proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

19   *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

20   dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

21   at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

22   (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational

23   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

24   475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

25         Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Id.*  If the evidence presented and any reasonable inferences that might

be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

dispute over an issue that is determinative of the outcome of the case.

Concurrent with the instant motion, defendants advised plaintiff of the requirements for

opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 45;

*see Woods v. Carey*, ___ F.3d ___, Nos. 09-15548, 09-16113, 2012 U.S. App. LEXIS 13779 (9th

Cir. July 6, 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*,

527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## III.    Analysis

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane

methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*,

465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a

conditions of confinement claim, and only those deprivations denying the minimal civilized

measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Prison officials "must provide humane

conditions of confinement," including "adequate food, clothing, shelter, and medical care."

*Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).  To succeed on an Eighth Amendment

conditions-of-confinement claim, a prisoner must show that (1) the defendant prison official's

conduct deprived him or her of the minimal civilized measure of life's necessities (the objective

component) and (2) that the defendant acted with deliberate indifference to the prisoner's health

or safety (the subjective component).  *Id.* at 834.  To show deliberate indifference, the prisoner

must establish that the defendant knew of and disregarded an excessive risk to inmate health or

safety; "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

To prevail on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096.  An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332.  Rather, the plaintiff must show that the course chosen by the defendants was medically unacceptable under the circumstances. *Jackson*, 90 F.3d at 332. When a prisoner alleges a delay in medical treatment, he must show the delay caused an injury. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay in treatment did not violate Eighth Amendment where there was no emergency and given plaintiff's condition, i.e., a severe shoulder injury, the only remedy immediately available was painkillers).

Finally, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to prevent a violation imposed by someone else. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).  A defendant-officer may be held liable for failing to intervene when he had enough time to observe what was happening and to intervene and prevent or curtail the violation, but failed to do so. *See Lanier v. City of Fresno*, 2010 U.S. Dist. LEXIS 130459, 2010

WL 5113799, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).

For the reasons that follow, the undersigned concludes that plaintiff has failed to demonstrate a genuine dispute of material fact, and summary judgment is therefore appropriate. Defendants argue that the undisputed facts show that they did not violate plaintiff's Eighth Amendment rights.  As to defendant Veal, plaintiff has produced no evidence that defendant Veal was responsible for plaintiff's alleged harm.  Liability under § 1983 may be imposed on a supervisor like defendant Veal if: (1) the supervisor personally participated in the deprivation of constitutional rights, or (2) the supervisor knew of the violations and failed to act to prevent them, or (3) the supervisor implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991).

First, plaintiff has not produced any evidence that defendant Veal personally participated in his placement on contraband surveillance watch.  There is no evidence in the record that plaintiff was placed on contraband surveillance watch because defendant Veal ordered it; instead, the evidence shows that plaintiff was segregated because a correctional officer alleged that plaintiff had hidden contraband in his rectum.  The lock-up order, filed earlier in this action by plaintiff, nowhere bears defendant Veal's name or signature.  Dckt. No. 37 at 4.  Second, plaintiff has not produced any evidence that defendant Veal knew that his placement on contraband surveillance watch would cause plaintiff harm but failed to act to prevent that harm. Third, plaintiff has not produced a policy authored or enforced by defendant Veal requiring that an inmate be shackled and placed in administrative segregation for suspicion of contraband regardless of the his medical condition.  Plaintiff has simply produced an unidentified document containing a section entitled "52050.11.3 Restraint Gear Use."  Dckt. No. 55-3 at 11.  Nothing in the document indicates that it was authored or enforced by defendant Veal.  Further, the section referenced by plaintiff states, "[N]o restraint equipment shall be . . . applied in any way as to inflict physical pain, undue physical discomfort, restriction of blood circulation or breathing."

1   *Id.*  Plaintiff has additionally offered the Contraband Surveillance Watch Procedure for Kern

2   Valley State Prison, signed by Warden M.D. Biter.  Dckt. No. 55-4 at 23-27.  That document is

3   not material to the instant dispute, which concerns events at CMF, not Kern Valley State Prison.

4          Moreover, plaintiff has produced no evidence, other than his own self-serving statements,

5   that his placement in restraints while on contraband surveillance watch, rather than some other

6   factor, caused his AV graft to become clogged or that the restraints otherwise caused him serious

7   harm.  *See FTC v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (stating that, while

8   "[s]pecific testimony by a single declarant can create a triable issue of fact, . . . the district court

9   . . . need not find a genuine issue of fact if, in its determination, the particular declaration was

10   uncorroborated and self-serving.")  There is no medical evidence in the record to support this

11   contention.

12          In sum, plaintiff has not produced evidence upon which a reasonable jury could conclude

13   that defendant Veal was responsible for placing plaintiff in conditions that posed a serious risk of

14   harm either directly or through a policy he implemented.

15          As to defendant Andreasen, plaintiff has not produced evidence that Andreasen refused

16   or failed to respond reasonably to plaintiff's medical needs.  Plaintiff contends that Dr. "Al-

17   Banner" ordered on August 3, 2006 that plaintiff be sent immediately to an outside hospital for

18   declotting but that defendant Andreasen instead sent him back to administrative segregation.

19   Plaintiff's evidence shows that a Dr. Al-Bander noted on August 3, 2006 that plaintiff should be

20   sent to QVMC for declotting (Dckt. No. 55-3 at 36) and to the prison clinic for evaluation of his

21   complaints of severe abdominal pain (*id.* at 37), but Dr. Al-Bander did not indicate that plaintiff

22   must be sent *immediately* to QVMC for the declotting.  Another note in plaintiff's medical file

23   states, "Dr. Dhillon talked to Dr. Andreasen about pt.'s graft that is clotted[.]  Per Dr. Andreasen

24   pt.'s problem will be taken care of in AM.  Pt. released to custody and back to house.  Pt. not in

25   any distress."  *Id.* at 41.  Rather than demonstrating defendant Andreasen's deliberate

26   indifference, plaintiff's medical records indicate that defendant Andreasen submitted an "urgent"

1   (but not "emergent") request that same day (August 3, 2006) that plaintiff be taken to QVMC for

2   declotting.  *Id.* at 42.  The request was approved on August 4, 2006 (a Friday) and an

3   appointment was scheduled for August 7, 2006 (a Monday).  *Id.* at 43, 46.  Plaintiff refused to go

4   to QVMC for the declotting on August 7th, however.  Dckt. No. 55-3 at 43, 50.  A chart note

5   explains that plaintiff was "very angry and loudly state[d] that he won't go to Queen of the

6   Valley for any F/U of his shunt.  MD explained to patient the risk of not declotting his shunt.  Pt.

7   still very solid he refuses to go to Queen of the Valley."  *Id.* at 50.  Plaintiff testified at his

8   deposition that he did not want to return to QVMC because they had placed the AV graft in his

9   arm without his consent in late July.  Pl.'s Dep. 40:6-11.  Plaintiff was taken to QVMC for the

10  declotting on August 15, 2006 after the appointment was rescheduled.  Dckt. No. 55-3 at 54.

11          Simply put, plaintiff has produced no evidence supporting his general assertion that

12  defendant Andreasen denied him all medical care while he was on contraband surveillance watch

13  or, more specifically, that the declotting procedure needed to be performed immediately on

14  August 3rd and that it was not medically reasonable for the procedure to be scheduled four days

15  later.  Indeed, the evidence shows that the graft was successfully declotted 12 days later, after

16  plaintiff consented to be treated at QVMC.  Dckt. No. 55-3 at 54-60.

17          Nor has plaintiff raised a triable issue that defendant Andreasen's decision to release him

18  back to segregation was deliberately indifferent.  While plaintiff alleges that his dressings were

19  not changed during the time that he was segregated, plaintiff's medical records indicate that one

20  or more dressings were changed at each dialysis appointment on August 1st, 3rd, and 5th.  Dckt.

21  No. 47-1 at 14 (August 1, 2006 "Drsg Δ'd"), 18 (August 3, 2006 "Drsg Δ to 2 cath done per

22  protocol"), 27 (August 5, 2006 "routine cath care rendered").  Plaintiff has presented no

23  evidence beyond his own self-serving statements that he needed dressing changes that were not

24  performed or that defendant Andreasen was responsible for those dressing changes.  In addition,

25  as discussed above, plaintiff has not presented evidence upon which a reasonable jury could

26  conclude that his placement in restraints presented a risk of harm.  Accordingly, plaintiff has

1    failed to show that defendant Andreasen exposed plaintiff to a serious risk of harm by releasing

2    him to return to administrative segregation.

3       Because plaintiff has failed to present evidence upon which a reasonable jury could

4    conclude that defendants Veal and Andreasen violated his Eighth Amendment rights during the

5    time he was placed on contraband surveillance watch between July 30, 2006 and August 7, 2006,

6    the undersigned recommends that the motion for summary judgment be granted.

7    **IV.**    **Recommendation**

8       Accordingly, it hereby RECOMMENDED that defendants' April 16, 2012 motion for

9    summary judgment (Docket No. 45) be granted.

10      These findings and recommendations are submitted to the United States District Judge

11    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12    after being served with these findings and recommendations, any party may file written

13    objections with the court and serve a copy on all parties.  Such a document should be captioned

14    "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

15    within the specified time may waive the right to appeal the District Court's order. *Turner v.*

16    *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17    Dated:  December 3, 2012.

18

19                 EDMUND F. BRENNAN
                 UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26